[Crim. No. 1709.   Third Appellate District.—February 2, 1940.]

THE PEOPLE, Respondent, v. BENNY MIZER, Appellant.

Margaret Gettys Hall for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant has appealed from an order denying his motion for a new trial after a verdict was rendered finding him guilty of perjury. The motion was presented on the grounds that (1) the court misdirected the jury in a matter of law, (2) the court erred in the decision of questions of law in the course of the trial, and (3) the verdict is contrary to law and the evidence. The judgment was suspended and the defendant was granted probation for the term of three years subject to his service for six months in the Stanislaus County road camp.

The defendant was charged with perjury consisting of falsely testifying under oath at a trial in the Juvenile Court of Stanislaus County on charges against Buford Anderson and Mary Parchan of contributing to the delinquency of the latter's minor daughter. The information alleges that the perjury consisted of wilfully swearing falsely to material issues embraced in fourteen questions and answers quoted from his testimony in the delinquency proceeding. The falsity of his evidence was established by the testimony of Anderson who frankly admitted the delinquency charges against him. To impeach the defendant the district attorney and the chief of police testified that the defendant previously told them of his knowledge of the facts establishing Anderson's guilt of the delinquency charges, which statement was in absolute conflict with every material answer in response to the questions recited in the information. Two of the questions contained in the perjury charges were truthfully

answered by the defendant in his testimony at the delinquency proceeding. But those two questions were merely preliminary and not material to the chief issue regarding the necessary elements of perjury consisting of alleged false testimony regarding defendant's knowledge of improper relationship between his half-sister and Anderson in the presence of her minor daughter. The perjury charge was fully established independently of those two challenged questions and answers.

The facts which led to the trial of the delinquency proceeding, from which this perjury charge developed, were as follows: Mary Parchan and her eleven-year-old daughter were sleeping together in a bed at one end of a trailer house parked at the rear of a saloon. In the other end of the same trailer house Buford Anderson and the defendant, a nineteen-year-old half-brother of the woman, slept on a pallet. Anderson and Mary Parchan were not married. She was a dissolute woman. Anderson testified that while he was sleeping with the defendant in that trailer he arose on several occasions and got into bed with Mrs. Parchan and had illicit relations with her, in the presence of her daughter, who also occupied the bed at the same time. Information of their flagrant conduct reached the officers. The defendant was interviewed and told them that he saw, heard and knew that Anderson committed those acts on at least three occasions, relating the circumstances and details thereof. The delinquency proceeding was then commenced. At that trial, under oath, the defendant flatly denied that he either saw, heard or knew that Anderson ever committed those acts. He said he had no knowledge of that illicit relationship, and he denied that he had told the officers he had any such knowledge. A portion of the defendant's false testimony was incorporated in the information in this case, as the basis of the charge of perjury.

The verdict is adequately supported by the evidence. The record leaves no doubt that the defendant knew of Anderson's illicit relations with his half-sister in the presence of her daughter; that he was present several times when those acts were performed, and that he previously told the truth to the officers regarding Anderson's conduct. The fact that those acts were repeatedly performed in a small trailer room in the immediate presence of the defendant, warranted

the jury in believing and finding that the defendant saw, heard and knew of Anderson's conduct.

The substance of the charge of perjury in this case is the defendant's false testimony at the trial of the delinquency proceeding regarding his knowledge of the improper relationship between his half-sister and Anderson. His knowledge of that relationship was the important factor determining his guilt or innocence of the charge of perjury. The implied findings of the jury necessarily assume that they believed the defendant knew of the illicit relations in the presence of the minor child, and that he wilfully testified falsely in that regard. There is an abundance of evidence to support the verdict of his guilt of perjury as charged. There was no miscarriage of justice in this case.

■ The appellant contends there is a fatal variance between the allegations of the information and the evidence adduced in that the information asserts that *"all of said answers* to said questions . . . were false"*, while the evidence is uncontradicted that two of the answers were really true. On the theory that it was necessary for the prosecution to prove that each and every one of the answers to the questions included in the information were false in order to constitute the charge of perjury, it is claimed the verdict is not supported by the evidence. The two challenged questions to which true answers were given are:

(1) "Q. Did they (District Attorney and Chief of Police) *ask you* if Anderson had been sleeping with your sister? A. I think they did."

(2) "Q. Didn't he (the District Attorney) or the Chief of Police Arington *ask you about Anderson getting into bed with your sister?* A. They asked me if he did."

The answers to all of the other questions were false. The two preceding questions and answers were merely preliminary to the real merit of the inquiry. They did not involve necessary elements of the perjury charge which was based on defendant's actual knowledge and testimony regarding Anderson's illicit relations with his half-sister in the presence of her daughter. The fact that those two questions were truthfully answered is immaterial in determining the defendant's guilt or innocence of the charge of perjury.

In support of the appellant's claim that every answer to the fourteen questions quoted in the information must have been found to be false, before the verdict can be sustained,

he relies on the cases of *Welch* v. *State,* 88 Tex. Crim. 346 [227 S. W. 301], and *People* v. *Senegram,* 27 Cal. App. 301 [149 Pac. 786]. In the first case cited it is said:

"Having alleged it [the language constituting the alleged perjury] *in solido* and that all the testimony alleged be false was in fact false, the state must so prove it in order to secure a conviction."

The doctrine of *"in solido"* which is announced in the Texas case is not supported by the Senegram opinion. At least that rule has no application to the facts of either the present case or the Senegram suit. In the Senegram case the indictment charged perjury consisting of false statements in each one of the answers to thirty questions recited therein. The court says in regard to the necessity of proving that each answer was false:

"The indictment, since it alleges that each and every one of the answers was false, *must be deemed sufficient as a separate and distinct assignment of perjury based upon each answer sworn to by the defendant.* If this be true, it necessarily follows that the court committed no error by instructing the jury that if they found *any of the matters* or testimony set forth in the indictment *to be false,* such fact was sufficient to justify them in bringing in a verdict of guilty."

That statement of the law answers the contention of the appellant in this case adversely to him.

In the present case the information alleges "That all of said answers to said questions made by the defendant were false and known to be false by the defendant." Reasonably construed that statement means that *each and all* of the answers were false. If they were *all* false, then *each of them* was false. The only answers which were not false were in response to preliminary questions which were unnecessary and immaterial to the charge of perjury. If there was any uncertainty regarding the meaning of the language of the information, it was waived by failing to demur to the pleading. In this action, similar to the Senegram case, the court properly instructed the jury that it was not necessary to prove that *each and all* of the answers of the defendant were false, but that if they believed beyond a reasonable doubt that he had wilfully sworn falsely to *any one of the material statements charged,* it was their duty to find him guilty. There can be no doubt all of the jurors agreed upon his guilt with respect to the same charges, because

they found him guilty of each and all of them by returning a verdict of ''Guilty of perjury, . . . *as charged in the information.''*

In the case of *People* v. *Pahrman,* 117 Cal. App. 433 [4 Pac. (2d) 242], in which a hearing by the Supreme Court was denied, the doctrine of *in solido* was not approved. The application of that principle was rejected. If accepted it would necessarily have resulted in a reversal. The indictment in that case charged perjury by alleging conjointly two distinct statements of the accused and asserted that each·of them was false. Only one of them proved to be false. The other one was true.

The defendant was nevertheless convicted of perjury ''as charged''. The judgment was affirmed. The court said regarding the doctrine of *''in solido'',* after reviewing the Welch case, the Senegram case and other perjury authorities, that:

''This somewhat lengthy review of the authorities satisfies us that the rule contended for not only is not established in this state, but also that it is not so rooted in the common law that it is a 'fixed and fundamental principle of law' to which we must bow.''

There is no doubt that when several inseparable statements which are necessary and material parts of the same narrative are charged as perjury, the failure to prove a material portion thereof is fatal to a conviction. That situation clearly has no application to the facts of this case.

■ To invalidate a verdict on account of variance between the allegations of the information and evidence of the crime, it must appear that some *necessary and material* element of the charge lacks proof. The absence of evidence on an immaterial portion of a recitation of facts will not·vitiate the verdict. In 31 Corpus Juris, page 840, section 451, it is said in that regard:

''Variance is defined to be a disagreement between the averments of the indictment and the proof in some matter *which is legally essential to the charge.* . . . A variance as to a matter which is not material is not fatal.''

With respect to the crime of perjury it is likewise said in 48 Corpus Juris, page 886, section 138:

''Strictness of proof is required in all matters which constitute the essence of the crime, and a substantial variance in this regard is fatal; but strict proof is not required as to

immaterial averments, or it has been stated, as to those which are not descriptive of the offense, and a variance in respect of such matters is not fatal.''

■ The court did not err in giving, refusing to give or modifying instructions to the jury. The chief error in the court's charge to the jury assigned by the appellant involves the same question previously determined with respect to the necessity of finding that each answer to the various questions quoted in the information was false. In accord with what we have said upon that subject, defendant's instruction number 4 was properly refused. It directed the jury that each and every answer to the questions included in the information must be found to have been false before the defendant could be convicted of perjury. On the contrary, the prosecution's instruction number 7, which was properly given to the jury asserted that it was not necessary for them to find that each and all of the answers were false, but that it was sufficient if they found any one of the material statements charged as perjury to have been false. That instruction was taken almost *verbatim* from the case of *People* v. *Senegram, supra,* in which that statement of the law was specifically approved. The appellant in this case may not complain that he was found to be guilty of perjury as charged in the information merely because he truthfully answered two preliminary questions, but falsely answered the other twelve questions bearing directly on his knowledge of the illicit relations between his half-sister and Anderson, which is the very gist of the crime of perjury with which he was charged.

■ The jury was properly instructed with respect to the intent with which the false testimony was given. Perjury was defined in the language of the statute. The jury was plainly told they could not convict the defendant unless it appeared beyond a reasonable doubt and to a moral certainty that, under oath, in a trial before a competent court, he wilfully testified falsely as to material facts, which were not only false, but which he knew to be untrue. It follows that such false testimony is necessarily given with the deliberate intent to deceive the jurors or the court with respect to the essential facts involved.

Defendant's instruction number 5 was argumentative and misleading. It was therefore properly refused.

The jury was fully and fairly instructed with respect to the crime of perjury as it is charged in the information. There is no substantial error in the charge of the court to the jury.

The motion for a new trial was properly refused.

The order is affirmed.

Tuttle, J., and Pullen, P. J., concurred.