THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
LUIS ORTIZ COLÓN, Defendant and Appellant.

No. 17269.   Decided April 13, 1962.

*Luis A. Archilla Laugier* and *Vicente Ortiz Colón* for appellant.

*J. B. Fernández Badillo, Solicitor General,* and *Juan A. Faría, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

It is provided by § 117 of the Penal Code (1937 ed.), 33 L.P.R.A. § 421 that "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury." One of the rules to determine the sufficiency of pleadings [1] in an information for the above-mentioned crime is contained in § 89 of the Code of Criminal Procedure (1935 ed.), 34

[1] Section 66 of the Code of Criminal Procedure (1935 ed.), 34 L.P.R.A. § 121, establishes that "All the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code." *Cf.* Rules 6.5 and 7 of those of Civil Procedure of 1958, 32 L.P.R.A. (Supp. 1960), pp. 92–93.

L.P.R.A. § 144, which provides ". . . it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed and in what court and before whom the oath alleged to be false was taken, and that the court or the person before whom it was taken, had authority to administer it with proper allegations of the falsity of the matter on which the perjury is assigned. . ."

A criminal prosecution for perjury was filed against appellant by an information which literally reads as follows:

"The above-named defendant LUIS ORTIZ COLÓN on April 17, 1958 and in Ponce, Puerto Rico, which is part of the Superior. Court of Puerto Rico, Ponce Part, and while he testified as witness in the case of... on Habeas Corpus, civil case No. CS-58-259, which is a procedure authorized by law, on Challenge of Probable Cause for the arrest and imprisonment of the aforementioned petitioners for the crime of murder without specifying degree, as coauthors and perpetrators of the death of... in the Superior Court of Ponce which court had jurisdiction and competence to decide the aforesaid case, and presided by... and having taken an oath in open court before an Assistant Clerk of the aforesaid Part, an official duly authorized to administer such oaths, to testify, to declare, to attest, or certify the truth before the aforesaid court, he unlawfully, willfully, maliciously and criminally, and contrary to the aforesaid oath, stated as true facts, among other things, that

on January 10, 1958... did not call for him in the Lincoln car of the aforesaid... at Línea Kofresí; that... did not ask him to get inside the car nor asked him a favor; that... did not take him by the Juana Díaz road; that... did not tell him that he had had an accident and asked him to help him remove something which was inside the car; that defendant did not answer him in the affirmative... and that the latter did not send him to get a car; that defendant herein did not go to the Línea Kofresí nor did he take the green Dodge car, license plate No. P-48-813; that defendant did not go to the house of... and that... did not tell him to leave the car there and to go with him in the Lincoln car; that... and defendant, did not drive around nor did they take some beer nor

return once more to the house of . . . ; that . . . , the wife of . . ., was not waiting for them in the porch; that . . . did not call him nor did they go into defendant's car; that . . . did not tell him to take the Juana Díaz road nor did he direct him to an uninhabited place; and that defendant, . . .and his wife did not arrive about 11:00 p.m. where there is a lake in the ward of Coto Laurel of Ponce, Puerto Rico; that. . . and his wife. . . did not get off nor did they open the right door of the back seat of the car nor did they take out the body of a woman who thereafter was found to be. . .; that. . .did not throw into any irrigation canal nor deposited therein the corpse of. . . that defendant did not engage in an argument with. . . nor with. . .because until then defendant did not know that the favor asked of him was to remove a body to that place; that defendant did not become nervous; that. . .nor his wife. . .kept telling him not to worry, that nothing would happen to defendant herein because it would not be found out; that defendant and. . . and his wife. . . did not get into the car and returned to Ponce, where defendant left them, near their home; that the prosecuting attorney. . . made him point out the place where the body of. . . was thrown, defendant not having any knowledge of the aforesaid place or of the fact that the aforesaid body had been thrown there; that in one of his trips to Salinas, Puerto Rico defendant herein did not tell. . . 'that for a long time he had been anxious to confess to the authorities because his conscience would not let him have peace,' referring to the participation of. . .and of defendant herein in the death and disappearance of. . .; that the prosecuting attorney. . .told him to state in a sworn statement before the aforesaid prosecuting attorney that. . . and defendant herein took. . . and threw her in an irrigation canal and left her there; and that the prosecuting attorney. . . told defendant herein 'What have you done, don't you see there's a suit of a million dollars; I have children, don't you know that I have children and that my title is at stake'; that the prosecuting attorney. . . yelled at him 'we'll put you in jail for thirty years' while defendant herein was testifying under oath what we have referred to,

such testimony given by defendant herein being false, the defendant being then and there aware of the falsity of his testimony, having the intention then and there, that such a testimony would have favorable effects on petitioners...in the habeas corpus proceeding filed by them and which was the object of a hearing, the above-mentioned facts being essential for the court to adjudge on the existence or nonexistence of probable cause for the arrest and imprisonment of the above-mentioned...for the crime of murder without specifying degree as coauthors of the death of..., defendant herein being aware then and there, that the above-mentioned facts were essential for the court to decide the above-mentioned petition for habeas corpus."

He was convicted and sentenced to serve a term of two to ten years in the penitentiary. He appealed.

1. The first error assigned refers to the sufficiency of the information and is based on the absence of an allegation establishing the true facts by way of antithesis, thereby depriving him of the right to be informed with clarity of the criminal acts with which he is charged, and hence, of the opportunity to prepare an adequate defense.

■ All that is required by the statute as one of the essential elements in an information for perjury is that it contain an express averment with respect to the essential character and materiality of the facts which the defendant swore to be true, knowing the same to be false, *People* v. *Nadal*, 64 P.R.R. 344 (1945); *People* v. *Marchany*, 61 P.R.R. 676 (1943); *Gandía* v. *People*, 29 P.R.R. 101 (1921); *People* v. *García*, 24 P.R.R. 652 (1917); *People* v. *Ayala*, 13 P.R.R. 195 (1907); *People* v. *Colón*, 10 P.R.R. 197 (1906), and furthermore that the statements made by defendant are false,[2] *People* v. *Bermúdez*, 75 P.R.R. 716 (1954), 38 Cal. Jur. 2d

[2] Appellant cites from 70 C.J.S. § 46(a) to support his argument on the necessity of alleging the antithesis of the facts alleged to be false, but all that this annotations sets forth is the appropriateness of including a negative of the veracity of the alleged false testimony. It textually reads: "It is necessary to negative the truth of the alleged false matter."

The section which deals with the setting forth of the true facts by way of an antithesis is No. 46(b) of the above-mentioned work.

§ 29. Both requirements were met in the information filed in the case at bar, since from the same it clearly appears that defendant testified in a judicial proceeding on certain facts which were *"essential* for the court to adjudge on the existence or nonexistence of probable cause for the arrest and imprisonment of . . . ,"* and it is previously set forth that "such testimony given by defendant herein being *false." Cf.* the informations for the same crime in *People* v. *Bermúdez,* 75 P.R.R. 716, 719 (1954) ; *People* v. *Corretjer,* 58 P.R.R. 45, 47 (1941) ; *People* v. *Capre,* 44 P.R.R. 108, 110 (1932) ; *People* v. *Viader,* 23 P.R.R. 672 (1916) ; *People* v. *Ortiz,* 11 P.R.R. 388 (1906) ; *People* v. *López,* 8 P.R.R. 546, 547 (1905) ; *People* v. *Pabón,* 7 P.R.R. 379 (1904).

The prevailing common-law rule required that the falsity of the facts testified by defendant be alleged by setting forth the true facts, and a general allegation that the testimony was false was not sufficient, *State* v. *Nelson,* 77 N.W. 223, 224 (Minn. 1898). The necessity of alleging the true facts by way of an antithesis has been upheld in some jurisdictions. *Chenault* v. *State,* 122 So. 98, 100 (Miss. 1929), citing *State* v. *Silverberg,* 29 So. 761 (Miss. 1901) ; *State* v. *Blitch,* 120 So. 355, 356 (Fla. 1929), citing *Fudge* v. *State,* 49 So. 128 (Fla. 1909). But the most favored rule establishes that it is unnecessary to allege the truth by way of an antithesis on which defendant falsely testified, *Gray* v. *State,* 111 Pac. 825, 827–829 (Okla. 1910), and that only with respect to a general statement—containing true facts and false facts—there arises the necessity of specifying the particulars which were sworn to falsely by setting forth the facts which are true, *People* v. *Bradbury,* 103 Pac. 215, 217 (Cal. 1909), *cf. People* v. *Kriton,* 166 P.2d 45 (Cal. 1946). Neither is it indispensable where the information clearly sets forth the facts whose falsity was allegedly known to the defendant, *Carter* v. *State,* 27 S.W.2d 781 (Ark. 1930) ; *cf. Dodson* v. *State,* 276 S.W.2d 306 (Tex. 1955). Likewise the federal

rule [3] does not require that the true facts be alleged by way of antithesis, *United States* v. *Hiss*, 185 F.2d 822 (C.A. 2, 1950) ; *United States* v. *Laut*, 17 F.R.D. 31 (1955).

■ The purpose underlying the specification of the false facts testified by defendant is to permit the latter to prepare an adequate defense and to place him in a position to allege former jeopardy in case he is later prosecuted for a similar crime arising from the same situation of facts. We have examined the information presented in the case at bar and we do not see how defendant's defense could be impaired. Furthermore, to determine the true facts it is merely necessary to omit the negative adverb "not" and the copulative conjunction "nor" which appear in the relation of the facts set forth in the information. Neither does it concern a general statement liable to create confusion, but a series of specific facts with respect to all of which defendant is charged to have falsely testified.[4]

2. Defendant-appellant sustains that the failure of the prosecution to prove the falsity of *all* the facts set forth in the information requires that he be acquitted for insufficiency

---

[3] In the Rules of Criminal Procedure submitted to the Legislative Assembly no express reference is made to the contents of an information for the crime of perjury as it is made in the present code. Rule 35(c) is proposed, which rule substantially follows federal Rule 7(c) under which the case of Hiss, *infra* was decided and which reads as follows:

"A statement of the essential facts constituting the offense charged, in ordinary plain and concise language, and in such manner as to enable a person of common understanding to know what is intended. The words used in the said statement shall be construed in their usual acceptance in common language, except such words and phrases as are defined by law or jurisprudence, which shall be construed according to their legal meaning. Words used in said statement need not follow strictly the words used in law, but other words conveying the same meaning may be used. It shall not be necessary in any case to set forth in the information or complaint any presumptions of law or matters of judicial notice."

[4] In the discussion of the fifth error appellant clearly shows that he was not prejudiced for he was able, after evidence for the prosecution was introduced, to determine the facts which the prosecuting attorney did not establish as false.

of evidence. He invokes the legal doctrine termed "in solido." It is admitted that the evidence established that defendant made the following statements: "that... and his wife... did not get off nor did they open the right door of the back seat of the car nor did they take out the body of a woman who thereafter was found to be...; that the prosecuting attorney... made him point out the place where the body of... was thrown, defendant not having any knowledge of the aforesaid place or of the fact that the aforesaid body had been thrown there; that in one of his trips to Salinas, Puerto Rico defendant herein did not tell... 'that for a long time he had been anxious to confess to the authorities because his conscience would not let him have peace,' referring to the participation of...and of defendant herein in the death and disappearance of...; that the prosecuting attorney... told him to state in a sworn statement before the aforesaid prosecuting attorney that... and defendant herein took... and threw her in an irrigation canal and left her there; and that the prosecuting attorney... told defendant herein 'What have you done, don't you see there's a suit of a million dollars; I have children, don't you know that I have children and that my title is at stake', that the prosecuting attorney... yelled at him 'we'll put you in jail for thirty years' while defendant herein was testifying under oath what we have referred to."

. ██ The doctrine "in solido," which also has its roots in common law, in fact establishes that when a general recital of the testimony which contain the false facts is made in the information and those facts are not separated or specified, the falsity of all that is alleged to be false must be proven. *Welch* v. *State*, 227 S.W. 301 (Texas 1921). This rule is not observed in California from where our own statute is derived. *People* v. *Mizer*, 99 P.2d 333, 335 (Cal. 1940); *People* v. *Pahrman*, 4 P.2d 242, 244 (Cal. 1931). When it is alleged, as in the case at bar, that false testimony was

given on a series of facts, and the evidence so establishes as to one or several, but not in respect to all of them, conviction must be sustained provided that those on which evidence is presented are substantial or material, *cf. People* v. *Gray*, 127 P.2d 72 (Cal. 1942) ; *People* v. *Pustau*, 103 P.2d 224 (Cal. 1940) ; *People* v. *Curtis*, 98 P.2d 228 (Cal. 1939). An examination of the facts which appellant himself accepts as established, shows that the evidence refers to substantial and material facts. Furthermore, if defendant was in doubt as to which were the facts on which it was alleged he had testified falsely, he could have moved for a bill of particulars, *United States* v. *Yetman*, 196 F. Supp. 473 (Conn. 1961). The error assigned was not committed.

■ 3. Appellant complains of the action of the trial court in accepting as evidence the sworn statement by Ortiz Colón made during the preliminary investigation carried out by the prosecuting attorneys for the purpose of determining criminal liability for the death of V . . . O . . . . a crime which two other persons were finally charged with, but for which he was not personally prosecuted, without first being permitted to introduce evidence to challenge the voluntariness thereof. We shall not stop to consider this contention because (1) it is not a confession which requires that its voluntariness be previously established—*cf. Commonwealth* v. *Sumrak*, 25 A.2d 605, 607 (Pa. 1942)—and (2) the testimony was offered merely to confirm the testimony of other witnesses as to the essential fact that defendant knowingly and under oath, made false statements on essential facts. See, *People* v. *Medina*, 38 P.R.R. 623, 626 (1928) which concerned a false statement made by defendant therein in an investigation made by the prosecuting attorney, and respecting the admissibility of the aforesaid statement in a proceeding for perjury we stated that "the statement was not a confession but an accusation against another person. This is not the case of a prosecution against Medina by reason of

any confession made by him... and we find no reason for reversing the judgment because of the alleged lack of spontaneity." See, *People* v. *Llera*, 37 P.R.R. 153 (1927) and *People* v. *Pabón*, 7 P.R.R. 379 (1904).

In this respect it should be remembered that the charge of perjury referred to the statement made by Ortiz Colón at the hearing of the habeas corpus petition and not to the statement made during the criminal investigation, that is, the question at issue was the falsity of the facts stated at the habeas corpus.[5] It was thus expressly admitted by counsel for the defendant when he objected to the testimony of one of the prosecuting attorneys who made the investigation as "irrelevant," "because Luis Ortiz Colón is not being prosecuted for anything he might have said in the course of an investigation, but is being prosecuted for what he said in a habeas corpus proceeding... and that testimony by the prosecuting attorney has nothing to do with the case of habeas corpus." (Tr. Ev. 210.)

4. The errors relating to the instructions to the jury and other commentaries made by the court are harmless. The instructions having been read as a whole—and without picking out mere isolated phrases from the text—it may be seen that the court adequately stated the law applicable to the members of the jury, and that the instructions required by the defense were comprised in those transmitted or they were clearly untenable. The commentaries and statements of which appellant complains lack the importance attributed to them and did not prejudice him, for they rather touch on semasiological questions.

The judgment rendered by the Superior Court, Caguas Part, on June 12, 1959, will be affirmed.

---

[5] As to the history of the case at bar, see 80 P.R.R. 243 (1958) and 80 P.R.R. 612 (1958).